## UNITED STATES *v.* BUCHANAN.

*(District Court, W. D. North Carolina.* November Term, 1881.\

1. STATUTES.

   Highly penal statutes are to be strictly construed.

2. SAME.

   A statute is to be construed so as to carry out, with reason and discretion, the intent of the legislature, though such construction may seem contrary to the letter of the statute.

3. MASTER AND SERVANT—CRIMINAL LIABILITY OF THE MASTER.

   Where a master, owing a duty to the public, entrusts its performance to a servant, he is responsible criminally for the failure of his servant to discharge that duty, if its non-performance is a crime.

4. CRIMES—REV. ST. § 3324—EFFACING STAMPS FROM EMPTY CASKS.

   An indictment, under section 3324 of the Revised Statutes, for a failure to efface a stamp from an empty cask which had contained distilled spirits, cannot be sustained, though the proof shows that the cask had been emptied so far as it could be done by the faucet, if there is proof of the additional fact that it had been removed, with the stamp still on it, from the place where it had been used in the course of business with intent to pour the spirits still remaining in it out of the bung-hole as soon as the necessary assistance could be procured for that purpose, and the delay is within reasonable time.

This was an indictment, under section 3324 of the Revised Statutes, for a failure to efface a stamp from an empty cask which had contained distilled spirits. The defendant was a duly-licensed retail dealer of distilled spirits.

The business was carried on in a small room in his dwelling, and was under the exclusive control of his wife. She kept the key of the room, and never allowed her husband, who was an intemperate man, to enter except when she was present. A deputy collector, while on a visit of inspection, discovered a cask which was duly stamped and had contained distilled spirits. The witnesses for the prosecution stated that the cask was entirely empty. Witnesses on the part of the defence stated that the cask was not entirely empty, but still contained about a pint or quart of spirits. The witnesses for the prosecution also stated that the wife of defendant was present at the time of inspection, and admitted that the cask was empty. The witnesses for the defence stated that the wife said, at the time, that she had emptied the cask that day as far as she could by the faucet, and had turned the cask up on the head so that she might procure assistance to draw off the entire contents through the bung-hole. The defendant was not present, and never had anything to do with carrying on the business except permitting the use of his house and allowing his name in procuring the license.

*James E. Boyd,* Dist., Atty., for the United States.

*J. W. Bowman* and *J. W. McElroy,* for defendant.

DICK, D. J., (*charging jury.*) It is conceded that the stamp on the cask was not effaced and obliterated as required by law. The only controverted question of fact which you have to determine is, was the cask empty when discovered by the deputy collector? The affirmative allegation is made in the indictment, and is material in constituting the offence charged; and, before a conviction can properly be had, you must be satisfied from all the evidence, beyond a reasonable doubt, that the allegation is true.

As the statute upon which this indictment is founded is highly penal, a general rule of construction requires that it shall be strictly construed, and not extended by implication. The words in a statute, if of common use, are to be taken in their natural, plain, obvious, and ordinary meaning. The offence charged in this case is a failure to efface and obliterate a stamp "at the time of emptying such cask," etc. You will consider what is meant by the words "emptying such cask." The ordinary signification of the verb "to empty" is to "make void;" "to exhaust;" "to deprive of the contents." If this ordinary signification of the word used in the statute is adopted, the defendant cannot be convicted unless the evidence shows that the cask was completely deprived of its contents—not a pint left. I am not disposed to adopt this strict literal construction, as there is another important rule in the construction of statutes which must be observed. We must consider the object and spirit of the statute, and try to ascertain, from the language of the whole and every part of the statute, what was the intent and purpose of the legislature in making the statute. The

intent of the legislature may be found in the statute itself, and from other statutes *in pari materia;* and also by considering the probable effects and consequences that would result from a strict literal construction. When ascertained, this intent should be followed with reason and discretion, though such construction may seem contrary to the letter of the statute; for it is the intent which often gives meaning to words otherwise obscure and doubtful. The evident intent of the legislature was to guard against frauds on the internal revenue by preventing the re-use of stamped casks which had once been emptied; and there was a great and manifest necessity to provide against frauds which could so easily be perpetrated. I am inclined to the opinion that when a retail dealer of distilled spirits draws off the contents of a cask as far as can be done from the faucet, and then removes it from the place where it had been used in his business, he should completely exhaust the cask, if he so desires, and efface and obliterate the stamp. If the law allows a retail dealer to empty a cask as far as can conveniently be done by the ordinary method, and then remove it from the place where used in the course of his business, and not efface and obliterate the stamp, because it still contains a small quantity of distilled spirits of little value, then the penalty of the law can easily be evaded, and the purpose of the legislature be frustrated.

I am also inclined to the opinion that the words "at the time of emptying such cask" ought not to receive such a strict construction as to require the effacing and obliterating of the stamp to be done *eo instanti* that the cask is emptied; but the act ought to be done in a convenient time, considering the surrounding circumstances affording evidence of reasonable excuse for delay.

If you should be satisfied from the evidence that the wife of the defendant, on the morning of the day when the cask was discovered, had emptied the cask as far as could be done by the faucet, and had removed it from the place where it had been used in the course of business, and had failed to efface and obliterate the stamp because she regarded the cask as still containing distilled spirits of value, which she desired to save, when she could procure the necessary assistance to pour it out of the bung-hole, then I charge you that there was reasonable cause for delay, and the defendant is entitled to a verdict.

If, however, you become fully satisfied from the evidence that the cask was entirely empty at the time it was discovered by the deputy collector, or that it contained a small quantity of spirits of little value,

and there was no reasonable cause for the delay in effacing and obliterating the stamp, then you ought to return a verdict of guilty.

The counsel for the defendant insisted that even if the jury should be fully satisfied that there was a violation of law, the defendant is not guilty, as the offence was committed by his wife in his absence, and without his knowledge and consent. As a general rule, the husband is not criminally liable for offences committed by the wife in his absence, and without his consent or procurement. If he is present with his wife, and participates in the crime, he may be indicted. In most cases of felony, but not in misdemeanors, where the husband is actually or constructively present at the time of the commission of a crime, the wife may be excused, although she participated, on the ground of the actual or presumed command and coercion of the husband compelling her to the commission of the crime. But this is only a presumption of law, and may be rebutted by evidence showing that she was not acting under compulsion, but was a voluntary and principal actor.

The rules of law as to the joint and separate liability of a husband and wife in the commission of crime do not govern this case, and they are only referred to as they were strongly insisted on in the argument of counsel. This is not a crime of commission, but the offence consists in a failure to perform a legal duty. The emptying of the cask was not criminal,—the failure to efface the stamp is the gist of the offence.

The defendant had undertaken a public business under a license from the government, and his wife was his agent in carrying on this business, and she omitted to perform a duty imposed by law upon persons engaged in such licensed employment.

As a general rule, a criminal act of a servant or agent does not subject the master or employer to any criminal responsibility, unless he directed or co-operated in such act, or the employment necessarily resulted in such unlawful act. It is, however, well settled that where a master, owing a certain duty to the public, entrusts its performance to a servant, he is responsible criminally for the failure of his servant to discharge that duty, if the non-performance of such duty is a crime.

The wife in this case was the agent of her husband, and he is criminally responsible, if, without reasonable justification and excuse, she failed to perform the duty imposed upon him by the law.

There is some direct conflict between the testimony of the witnesses

upon the material points in this case, which cannot be easily reconciled. The good characters of all the witnesses have been shown by the testimony of their acquaintances. In judging of the credibility of the witnesses, you should consider the motives by which they are influenced, and the manner in which they conducted themselves on the examination before you. You cannot decide the case upon the preponderance of testimony, as juries can do in civil cases. The presumption of innocence which the law throws around a person on trial for crime remains with and protects him until the government, by the whole evidence, satisfies a jury, beyond a reasonable doubt, that he is guilty in the manner and form as charged in the indictment.